# UNITED STATES DISTRICT COURT

for the

_____ District of __New Mexico__

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. 11-670 MR
See Attachment A )
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the __Judicial__ District of __New Mexico__ *(identify the person or describe property to be searched and give its location):*

See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of __21__ U.S.C. § __841__, and the application is based on these facts:

See Attachment C

☒ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's Signature*

Brandi Texeira, Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/3/11

_____
*Judge's signature*

City and state: Las Cruces, New Mexico

U.S. Magistrate Judge, Lourdes A. Martinez
*Printed name and title*

## ATTACHMENT A

1. A black Cricket Android Cellular Telephone Model: Hauwei M860, Phone Number 915-502-5307, FCC ID: QISM860, SKU: CRKM860KIT, S/N: 2XA7NB1132433196. The property is located with the Drug Enforcement Administration, Non-Drug Evidence Custodian, at 2290 E. Griggs Avenue, Las Cruces, New Mexico.

2. A silver AT&T Cellular Telephone Model: R225, Phone number 915-345-2088, FCC ID: Q78-GR225, SKU: 65182, S/N: 321811263877. The property is located with the Drug Enforcement Administration, Non-Drug Evidence Custodian, at 2290 E. Griggs Avenue, Las Cruces, New Mexico.

## ATTACHMENT B

1. All records, contained in CRICKET ANDROID CELLULAR TELPHONE Model: Hauwei M860, FCC ID: QISM860, SKU: CRKM860KIT, S/N: 2XA7NB1132433196 and AT&T CELLULAR TELEPHONE Model: R225, FCC ID: Q78-GR225, SKU: 65182, S/N: 321811263877 (hereinafter "Devices"), that relate to violations of the statutes listed on the warrant and involve Alejandro GARCIA-LUNA including:

    a) lists of customers and related identifying information;

    b) types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c) any information related to sources of narcotic drugs (including names, addresses, phone numbers, or any other identifying information);

    d) any information recording Alejandro GARCIA-LUNA's schedule or travel from January 2011 to the present;

    e) all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned [owned] the Devices at the time the things described in this warrant were created, edited or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data [date]) and any photographic form.

## ATTACHMENT C

### IN THE UNITED STATES DISTRICT COURT
### FOR NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF *SEE ATTACHMENT A, CURRENTLY LOCATED AT 2290 E. GRIGGS, LAS CRUCES, NEW MEXICO | Case No. _____ |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Brandi Texeira, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search CRICKET ANDROID CELLULAR TELPHONE Model: Hauwei M860, FCC ID: QISM860, SKU: CRKM860KIT, S/N: 2XA7NB1132433196 and AT&T CELLULAR TELEPHONE Model: R225, FCC ID: Q78-GR225, SKU: 65182, S/N: 321811263877, hereinafter "Devices," which are currently stored, in law enforcement possession, at 2290 E. Griggs, Las Cruces, New Mexico (NM), for certain things particularly described in Attachment B.

2. I am a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) and have been since February of 2011. As such, I am a law enforcement officer of the United States within the meaning of Title 18, United States Code (USC) § 2510(7), and am empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18 USC §2516. Your Affiant, who is also a police officer in the state of New Mexico, has also

received specialized training in narcotics-related investigations, narcotics identification, and criminal interdiction. My experience as a TFO includes, but is not limited to, conducting physical surveillance, interviewing witnesses, debriefing cooperating drug traffickers, interviewing confidential sources of information, writing affidavits for arrest warrants, working with undercover agents and informants, and analysis of phone toll records. Your affiant has also investigated numerous narcotic investigations at the state level, and through employment at the DEA, has received experience in the investigation of violations of the federal drug laws. As a result, I am familiar with matters including, but not limited to, the means and methods used by persons and drug trafficking organizations to purchase, transport, store, and distribute drugs, and to hide profits generated from those transactions.

3. Through my training and experience, I know that individuals who deal in illegal narcotics/controlled substances commonly utilize cellular phones in the following:

   a. Drug trafficking organizations may have several members, each playing a different role and responsible for different functions with the organization. The members more often than not keep in touch with each other by way of cellular telephone. In the transporting aspect of the drug organization, the courier is often times told to make contact via cellular telephone to get further delivery instructions once the courier has successfully reached their destination.

   b. Narcotics traffickers often use cellular telephones to further their illegal activities by saving names, addresses, telephone numbers, text messages, voicemails, and photographs and/or video records of co-conspirators.

   c. Narcotics traffickers often keep photographs and/or video of themselves and their co-conspirators, narcotics, or profits on cellular telephones.

   d. Narcotics traffickers often place ownership of assets, including cellular telephones, vehicles, utilities, and real estate, in other persons names in order to avoid detection by law enforcement.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

5. On August 26, 2011, Dona Ana County Sheriff's Office Sergeant David Testa was using a stationary radar and observed a white colored 2008 Chevrolet pick-up truck traveling west on La Fe Avenue, near Plaza Avenue, located in Vado (Dona Ana County), New Mexico. Sergeant Testa measured the vehicle speed as 35 MPH in a posted 25 MPH speed zone. Sergeant Testa conducted a traffic stop on this vehicle and made contact with the driver, later identified as Alejandro GARCIA-LUNA.

6. Sergeant Testa asked GARCIA-LUNA if he spoke English, to which GARCIA-LUNA stated no. Sergeant Testa then requested for United States Border Patrol (USBP) to assist him in translating in Spanish. USBP Agent Charles House later arrived on scene and made contact with GARCIA-LUNA, as well as a female passenger. Through investigation, Agent House determined that GARCIA-LUNA and the passenger were both undocumented aliens. Agent House subsequently took custody of both GARCIA-LUNA and the passenger.

7. Due to the fact that both occupants were detained by USBP and the registered owner was not on scene, Sergeant Testa began the process to tow the vehicle. Per Dona Ana County Sheriff's Office policy, any vehicle that will be towed must be inventoried first. While conducting an inventory check of the vehicle, Sergeant Testa picked up a Styrofoam cup, located

near the center console between the driver and passenger seat. Sergeant Testa observed that the cup was unusually heavy and could feel an object hit against the inside of cup as he moved it to check the center console. Sergeant Testa opened the cup and observed a brick-like package wrapped in cellophane. The package further contained a white, rock-like substance which later field tested positive for the presence of cocaine and weighed 252 total gross grams.

8. GARCIA-LUNA was subsequently read his Miranda Rights and admitted to agents that he had been living illegally in the United States for approximately four months. GARCIA-LUNA further stated that all the narcotics located in the vehicle belonged to him and that he had been delivering narcotics in the Las Cruces and Vado, New Mexico area for approximately three months. One of the Devices was found on GARCIA-LUNA's person and the other was found in the vehicle's glove box.

9. Based on the forgoing facts of the investigation, I have probable cause to believe that the aforementioned Devices were used, or intended to be used, in furtherance of the operation of a criminal enterprise involved in the trafficking of controlled substances. Therefore, I have probable cause to believe that the Devices contain stored names and telephone numbers, and other information related to the ongoing and continuing sale and/or distribution of controlled substances. I intend to take names, telephone numbers, addresses, financial records, text messages and any other electronic data evidencing the use of the Devices. Such items constitute evidence of violations of Title 21 USC 841. There further exists probable cause to believe that the items described are being, or may be, concealed in the Devices described above.

10. The Devices are currently in the lawful possession of the DEA. It came into the DEA's possession in the following way: The Devices were seized on August 26, 2011, incident to the arrest of Alejandro GARCIA-LUNA. Therefore, while the DEA might already have all

necessary authority to search the Devices, I seek this additional warrant out of an abundance of caution to be certain that a search of the Devices will comply with the Fourth Amendment and other applicable laws.

11. The Devices are currently in storage at 2290 E. Griggs, Las Cruces, NM. In my training and experience, I know that the Devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the DEA.

## TECHNICAL TERMS

12. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones now offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on

personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a device that records still and moving images digitally. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store any digital data, such as word processing documents, even if the device is not designed to access such files. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive email. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets,

and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

  f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

13. Based on my training, experience, and research, I know that the Devices have capabilities that allow it to serve as a wireless telephone, a digital camera, a portable media player, a Global Positioning System (GPS), a Personal Digital Assistant (PDA), and the internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC DEVICES AND STORAGE

14. As described above and in Attachment B, this application seeks permission to search and seize things that the Devices might contain, in whatever form they are stored. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Even when a user deletes information from a device, it can sometimes be recovered with forensics tools. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

15. Searching for the evidence described in Attachment B may require a range of data analysis techniques. In some cases, agents and computer analysts may be able to conduct

carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide information, encode communications to avoid using key words, attempt to delete information to evade detection, or take other steps designed to frustrate law enforcement searches for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to things described in Attachment B, or perusing all stored information briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, the DEA intends to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment B.

## CONCLUSION

16. I submit that this affidavit supports probable cause for a warrant to search the Devices and seize the items described in Attachment B.

Respectfully submitted,

Brandi Texeira
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me
on October 3, 2011:

LOURDES A. MARTINEZ
UNITED STATES MAGISTRATE JUDGE